**UNITED STATES v. CORDO et al.**
No. 70, Docket 21780.

United States Court of Appeals
Second Circuit.

Argued Nov. 9, 1950.

Decided Jan. 9, 1951.

Writ of Certiorari Denied March 26, 1951.
See 71 S.Ct. 572.

Gallop Climenko & Gould, New York City, for appellants. George Trosk, Jesse Climenko, New York City, of counsel.

Irving H. Saypol, U. S. Atty. for Southern District of New York, New York City, for appellee. Bruno Schachner, John D. Kelly, A. A. Blinder, Asst. U. S. Attys., New York City, of counsel.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

Bernard Boruck, Harry Minkoff, Vito Jordan Cordo, Pasquale William di Pinto, Arthur Lief, Max Boruck and James Boruck were charged in count one of an indictment with possessing goods stolen from interstate commerce knowing them to have been stolen, and in count two with having conspired with each other and with other persons unknown to receive and possess such goods contrary to the provisions of 18 U.S. C.A. § 409.[1] Cordo, di Pinto and Lief having first changed their pleas from not guilty to guilty, testified in behalf of the government at the trial of the others. Max Boruck and James Boruck were acquitted by the jury. Harry Minkoff was convicted and sentenced to imprisonment on both counts, his sentence on count two being less than, and running concurrently with, his sentence on count one. Bernard Boruck was convicted and sentenced on count one only. Both Minkoff and Bernard Boruck have appealed.

The goods which were stolen are the same as those which were involved in Smolin's appeal in United States v. Smolin, 2 Cir., 182 F.2d 782. The appellants had to do with them while the thieves were trying to sell them to Minkoff before they were purchased by Smolin, and the evidence of the theft of the goods from interstate commerce was substantially the same as that in the Smolin case.

There was evidence from which the jury could have found the following facts. On April 26, 1946, certain cartons or bales of textile goods were received at the terminal

1. Now 18 U.S.C.A. § 659.

of the Whisenant Transfer Company in New York City. They had been sent to the terminal from textile mills in North Carolina and were being held there for delivery to consignees in New York City, the name of the consignor and that of the consignee being plainly marked on each carton or bale. On Saturday, April 27, 1946, part of these cartons or bales were stolen from the warehouse by Cordo, di Pinto, and Lief and taken in a closed truck to a parking place across the street from Cordo's home in Brooklyn. The next morning Cordo telephoned appellant Minkoff that he had some "piece goods" for sale. Minkoff later in the day went to Cordo's home where Cordo met him outside and pointed out the truck across the street, telling Minkoff it contained a load of "hot" goods which had been "taken" the previous day. Minkoff did not go to the truck but told Cordo to send it the next morning to a garage at 17th Street and 10th Avenue in New York City. This was done. The garage turned out to be that of the Authority Trucking Company which was a partnership consisting of appellant Bernard Boruck and his father Max and brother James, from whom appellant Minkoff rented a comparatively small space for storing materials used in a fertilizer business he conducted. Cordo arrived at the garage soon after the truck did and told appellant Boruck and his brother that it contained a load of "hot" goods which Minkoff had told him to send there. Following their instructions, the truck was then backed into and to the rear of the garage, where they began to unload the goods onto a platform near a door leading into an adjoining building. The unloading had but begun, however, when Max Boruck appeared and refused to let the goods be unloaded or left in the garage because he had reported a burglary which had occurred there the night before and police were coming to investigate. Appellant Minkoff, who had by then arrived, insisted that the goods must be stored somewhere. Appellant Boruck said they could be put in an empty trailer which was parked in a nearby lot, and he, with his brother, assisted in transferring them from the truck to the trailer. Afterwards Minkoff went to the trailer with Max Boruck

and came back with a sample of the goods. He then offered $3,000.00 for the loot but Cordo refused and said he would take it away. Minkoff insisted that "with all this excitement" it would be too dangerous to remove the goods before the next day. He prevailed in having them left in the trailer until the following day, when they were taken away.

The appellants seek reversal because, although they had nothing to do with any theft or conspiracy to steal, evidence of both was admitted; because there was insufficient proof (1) that the stolen goods were part of an interstate shipment, and (2) that they were ever in possession of them. Also, Boruck relies upon the admission, and submission to the jury, of a statement he gave the F. B. I. after his arrest, and Minkoff upon lack of proof (1) that he conspired to possess the goods and (2) that he knew they had been stolen from interstate commerce.

While it is true that neither of these appellants were concerned in any way with the theft of the goods, proof of the theft and the surrounding circumstances was relevant, and indeed necessary, to prove that they had possessed and conspired to possess goods which had been stolen from interstate commerce as charged in the indictment. United States v. Tannuzzo, 2 Cir., 174 F.2d 177, certiorari denied, 338 U.S. 815, 70 S.Ct. 38.

The asserted lack of evidence to prove the interstate character of the goods when stolen fails in the light of the proof that the cartons and bales were each plainly labelled with the names of the North Carolina consignor and the New York consignee. Cf. United States v. Smolin, 2 Cir., 182 F.2d 782.

Nor was the evidence insufficient to show custody and control of the goods by appellant Boruck, which amounts to that possession made unlawful by the statute. He was one of the partners in control of the garage. After he and his brother had accepted the goods for storage there, it was he who provided a substitute, the trailer, and helped put them there. We think this an adequate basis on which the

jury could find that he had the requisite possession of the goods while they were in the trailer. Of course this was not exclusive possession for he acted with and for Minkoff, who had taken it upon himself to store the goods and had insisted that his landlord provide the storage space. Since the trailer was provided for that purpose, the situation is no different for the purposes of this appeal than it would be if a part of the garage had been so used. The trailer was owned by a company for whom the Borucks were dispatchers, and appellant Boruck knew it would be unused by its owner for a few days and available to him for the storage use to which he put it. Thus there was sufficient evidence to enable the jury to find that both the appellants possessed the goods.

■ The statement given the F. B. I. was received in evidence without objection, and the argument now made that it was the result of coercion or illegal detention contrary to the McNabb rule[2] is not based upon facts which show that.

■ Moreover, the statement was not in any real sense a confession but was obviously intended to be exculpatory. When it was submitted to the jury with other exhibits it was as written and signed, but error is now urged because it is said that counsel had agreed that some portion should be omitted. Such an understanding was not admitted, or shown by this record, and that leaves nothing to support this claimed error.

■■ The conviction of Minkoff under the second count is attacked on the basis of United States v. Zeuli, 2 Cir., 137 F.2d 845, in which we held that cooperation inherent in the commission of the substantive offense does not constitute a criminal conspiracy. That decision has no application when cooperation is not an element of the substantive crime. United States v. Simonds, 2 Cir., 148 F.2d 177; United States v. Loew, 2 Cir., 145 F.2d 332, certiorari denied 324 U.S. 840, 65 S.Ct. 587, 89 L.Ed. 1403. And no cooperation is required for consumma-tion of the crime of possessing stolen goods; the thief alone may be guilty. Carroll v. Sanford, 5 Cir., 167 F.2d 878; United States v. Dunbar, 7 Cir., 149 F.2d 151, certiorari denied, 325 U.S. 889, 65 S.Ct. 1577, 89 L. Ed. 2002.

■ Proof of knowledge that the goods had been stolen from interstate commerce, necessary to the conviction for conspiracy but not for the crime of possession,[3] was adequately supplied by the evidence that Minkoff inspected the cartons and bales, and that they were clearly marked with the names and addresses of the North Carolina consignors and the New York consignees. United States v. Smolin, supra.

■ Furthermore, the sentence under count one is longer than, and is to run concurrently with, the conspiracy sentence, so that neither of the alleged errors under the second count would require reversal. See, Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173; United States v. Bronson, 2 Cir., 145 F.2d 939.

Judgment affirmed.

### Appeal from Denial of a Motion for a New Trial.

■ The appellants have also appealed from an order denying their motion for a new trial. The basis for that motion was that Cordo, after this trial had ended, testified at the trial of United States v. Smolin, to which reference had been made in the foregoing opinion, that he did not tell Minkoff that the goods had been stolen. As Cordo had testified in this trial that he had told appellant Minkoff that the goods were "hot," this change in his testimony was relied on by both appellants as self-impeachment so substantial as to entitle them to a new trial. The necessary procedural steps were taken after appeal to have the District Court pass upon the motion in compliance with Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S. C.A.

At the hearing there was enough to show that Cordo had not recanted and that he

2. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

3. United States v. Sherman, 2 Cir., 171 F.2d 619.

insisted that either he had misunderstood the question he was asked at the Smolin trial or that his answer had been misunderstood. However that may be, he was shown at this trial to have had a criminal record, to have pleaded guilty to several crimes for which he had not yet been sentenced, and to have turned government's witness before as he was doing here. It is hardly to be supposed that, upon a new trial, the credibility of so unsavory a character would be more than negligibly affected by such proposed evidence as this, even if the contradiction could be established. At any rate there is much less than enough to show any abuse of discretion in the denial of the motion. Absent such a showing, the appeal is frivolous. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562.

Appeal dismissed.