**UNITED STATES of America**
v.
**James GIULIANO, Appellant.**
**No. 12702.**

United States Court of Appeals
Third Circuit.

Argued Jan. 6, 1959.

Decided Feb. 20, 1959.

Charles A. Stanziale, Newark, N. J., for appellant.

John D. Wooley, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The appellant, James Giuliano, was convicted in the District Court for the District of New Jersey on all five counts of an indictment, and he appeals from the judgment entered thereon.[1] The first count charged the appellant with conspiring with other named defendants (1) to engage and conduct the business of a distiller at Laurel Hill Farm, Pine Hill Road, Millstone Township, Monmouth County, New Jersey, without having given the bond required by law; (2) to possess and control a still and distilling apparatus without legally registering same; and (3) to make and ferment mash fit for distillation. The remaining counts are substantive in nature: the second, third, and fourth counts allege the same overt acts as are alleged to have been the subject of the conspiracy; the fifth count charged that appellant and the other defendants had and possessed distilled spirits and property used in violation of the Internal Revenue laws relating to liquor.[2]

It is contended by the appellant that the district court erred in failing to grant his motion for judgment of acquittal. Specifically, it is urged that the evidence adduced by the government failed to prove beyond a reasonable doubt that appellant was guilty of the crime of conspiracy or any of the four substantive counts.

At this juncture in the case, it is incumbent upon us to make a careful examination of the evidence to ascertain "whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt." United States v. Allard, 3 Cir., 1957, 240 F.2d 840, 841.

The facts as brought out at the trial may be fairly summarized as follows: At about 9:30 a. m. on the day the Alcohol and Tobacco Tax Unit raided the still operation at Laurel Hill Farm, Monmouth County, New Jersey, March 28, 1958, appellant was seen driving a heavily laden, yellow 1949 Studebaker pick-up truck south on McCarter Highway in Newark. The truck was followed by a black 1948 Studebaker sedan operated by Angelo Di Orio, a defendant and alleged co-conspirator. At approximately 11 o'clock the same day, the truck and car were seen entering the Laurel Hill Farm. The truck still appeared heavily laden and the rear portion was covered, frustrating any identification of its contents. The search warrant which had been previously obtained by the agent of the Alcohol and Tobacco Tax Unit was executed at 11:30 a. m. the same morning. The barn on the farm was found to contain a large alcohol still consisting of a boiler and all the equipment required for the distillation of alcohol. Within the same building four large wooden vats containing approximately 9,400 gallons of fermenting mash were discovered. The yellow truck which earlier had been observed entering the farm was found within the barn. At the time of the raid it merely contained empty sugar bags; however, beside the truck were stacked substantial quantities of sugar, yeast, and five-gallon cans. The appellant was observed

---

1. Appellant was jointly tried with defendant John Monticello. Both were convicted and their appeals argued the same day. However, inasmuch as the proof in regard to the defendants is dissimilar in some important respects, the appeals will be considered separately.

2. The five counts of the indictment were laid under the following statutes: 18 U.S.C. § 371; 26 U.S.C. § 5606; 26 U.S.C. § 5174(a); 26 U.S.C. § 5216(a) (1); and 26 U.S.C. § 5686(b).

crouching behind the left front wheel of the truck, and when queried concerning his presence there, indicated he was fixing a flat. No flat tires were observed on the truck nor was there any evidence that any tire had recently been changed. Also arrested at the site were a number of appellant's co-defendants. The agents also seized the black Studebaker sedan which had followed the truck to the Laurel Hill Farm.

Prior to the day of the raid, on March 7, 12, 17 and 18, the appellant was observed driving the same yellow Studebaker truck on public highways in the vicinity of the farm or headed in that general direction. On at least one occasion it appeared to be heavily laden although its contents were not visible. Appellant was observed driving the same truck out of the barn on the farm on March 19. After parking the truck he entered the farmhouse and remained there for about fifteen minutes. He then returned to the truck and drove away. On that occasion one agent testified that several five-gallon cans were part of the load.

On three additional occasions, all prior to the raid, appellant was observed in the company of defendants Di Orio or Monticello. On March 20, 1958, the yellow Studebaker truck was observed entering a junk yard on Orton Street in Newark. Shortly thereafter, Di Orio twice drove past the yard in a green 1952 Oldsmobile sedan. Appellant and Monticello later left the junk yard, turned the corner of Orton and Grafton Streets, and reappeared a few minutes later in the green Oldsmobile driven by Di Orio. Four days thereafter, on March 24, 1958, appellant was seen in Newark checking the rear portion of the yellow Studebaker truck. He was joined by Di Orio and after some additional examination of the truck, appellant proceeded to an automobile repair shop. An unidentified man was later seen repairing the truck. Lastly, on March 26, 1958, the appellant was observed in the company of Di Orio in the vicinity of 90 Lock Street, Newark. He had driven to the spot earlier in

the afternoon and, after spending some time in a building at that address, returned to the black Studebaker sedan he had been driving. From the sedan he took a tool which appeared to be a bright red pipe threader and placed it in the trunk of Monticello's Ford. Later Monticello drove away in his Ford. It was testified that the same tool or one similar thereto was found in the trunk of the black Studebaker sedan which was seized on the still premises.

■ Admittedly, it is not the proper function of an appellate court to weigh evidence anew or to try to determine the credibility of witnesses heard at the trial below. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Manton, 2 Cir., 1938, 107 F.2d 834.

■ The government relies solely on circumstantial evidence to sustain the convictions involved herein. This court has unmistakably indicated that a conspiracy charge may be sustained on circumstantial evidence standing alone. United States v. Migliorino, 3 Cir., 1956, 238 F.2d 7; United States v. Georga, 3 Cir., 1954, 210 F.2d 45. Although there may have been some doubt at an earlier date, it is now well settled that the evidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Allard, 3 Cir., 240 F.2d 840, certiorari denied 1957, 353 U.S. 939.

■ Appellant asserts that the instant case, in regard to the conspiracy charge, is governed by the principle of United States v. Falcone, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, and United States v. Gerke, 3 Cir., 125 F.2d 243, certiorari denied, 1942, 316 U.S. 667, 62 S.Ct. 1033, 86 L.Ed. 1742. As the Supreme Court said in Direct Sales Co. v. United States, 1943, 319 U.S. 703,

709, 63 S.Ct. 1265, 1268, 87 L.Ed. 1674, the Falcone case stands for the proposition "that one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." The gist of the rationale for the case of United States v. Falcone may be found at pages 210–211, of 311 U.S. at page 207 of 61 S.Ct.: "Those having no *knowledge of the conspiracy* are not conspirators, * * * and one who *without more* furnishes supplies to an illicit distiller is not guilty of a conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had no knowledge." (Emphasis supplied.) Cf. Direct Sales Co. v. United States, supra. However, the instant case does contain much more. The appellant here was not shown to be an innocent dealer in sugar who was unaware of any conspiracy. In fact there was no evidence to show that he was a *dealer* in sugar or any other commodity. There is ample evidence from which the jury might find beyond a reasonable doubt that appellant knew of the large illegal still being operated at Laurel Hill Farm, which he had visited prior to the day of the raid. There was evidence indicating his presence within the barn at least on March 19, 1958. As to the existence of the conspiracy itself, we have held that "Overt acts done in apparent pursuance of a common plan serve as evidence to demonstrate the existence of a conspiracy." United States v. Migliorino, 3 Cir., 238 F.2d at page 9. And see United States v. Georga, 3 Cir., 210 F.2d 45. In the instant case a number of the overt acts that are sufficient to establish the conspiracy were performed by the appellant himself. Much more direct participation was shown in this case than appeared in the cases cited by appellant, and we are of the opinion that substantial evidence in the record supports the verdict of the jury on the conspiracy count. United States v. Pandolfi, 2 Cir., 110 F.2d 736, certiorari denied, 1940, 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416.

In regard to the substantive offenses, it is not necessary that the government show the appellant personally committed the offenses in question, for by virtue of 18 U.S.C. § 2,[3] an aider or abettor in the commission of crimes is to be treated as a principal. The established facts indicate that this is not a case of mere association with the other defendants. Here the appellant was observed on a number of occasions driving a truck seen at the still site and eventually seized at that site. It was often seen heavily laden and was once observed to be carrying five-gallon cans. He was seen to transfer an object identified as a pipe threader to the car of a fellow defendant, which tool or a similar one was found in a car seized at the still. The jury could very well conclude that he lied concerning his presence in the barn at the time of the raid and they could also conclude that the real reason for his presence in the barn was to deliver the sugar, yeast, and five-gallon cans found in close proximity to the truck he had just driven into the barn. It is clear to us that there was sufficient evidence to sustain a conviction on all counts.

The judgment will be affirmed.

3. "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).