## UNITED STATES v. RUSSO.

### No. 7763.

Circuit Court of Appeals, Third Circuit.

Submitted Oct. 6, 1941.

Decided Nov. 10, 1941.

Anthony A. Calandra, of Newark, N. J., for appellant.

Charles M. Phillips and Richard J. Hughes, both of Trenton, N. J., for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The defendant was found guilty of receiving and having in his possession, with intent to convert to his own use, certain goods which had been stolen while in transit in interstate commerce, the defendant allegedly having knowledge that the goods had been stolen.

The indictment was laid under the Act of February 13, 1913, as amended January 21, 1933, c. 16, 47 Stat. 773, 18 U. S.C.A. § 409, which, in so far as it is material to the matter contained in the indictment, provides that "* * * whoever * * * with intent to convert to his own use any goods * * * which are a part of * * * an interstate * * * shipment * * * shall * * * receive or have in his possession any such goods * * *, knowing the same to have been stolen; * * * shall * * * be fined * * * or imprisoned * * *."

The defendant assigns for error the alleged insufficiency of the indictment and several matters occurring at trial, including the trial court's refusal of the defendant's request at the close of the trial for a directed verdict of acquittal. In the view we take of the case, it is unnecessary for us to consider any more than the latter assignment. A review of the material evidence adduced at trial impels the conclusion that it was insufficient to warrant the jury's finding that the defendant had knowledge that the goods, whereof he was merely a constructive possessor, had been stolen. The facts in the case are substantially without dispute.

The defendant Russo and one Ventre were partners in the operation of a garage and trucking business in Newark, New Jersey. Ventre managed the garage and had charge of the business done there, while Russo's job was to drive a truck in outside service. The firm also leased space in the garage to a local trucking company which made daily use of the inside of the garage as a terminal for freight transference. It was Russo's practice when he had finished his day's work to park his truck on the street outside the garage. Thereafter it would be put inside by an employee of the trucking company after they had withdrawn their trailers from the loading platforms in the garage. When Russo would return for his truck in the morning, he would find it again parked on the street outside the garage. He entered the garage only occasionally,—usually to receive his share of the firm's earnings which Ventre would have ready for him. In addition to the truck which Russo operated on the outside, and of which he was the owner, he and Ventre severally owned two other trucks which, not being in regular use, were stored in the garage. Some time between Saturday afternoon, July 9, and Monday morning, July 11, 1938, a number of cartons of cigarettes, which had been stolen while being moved in interstate commerce, were placed on the Ventre and Russo trucks which were stored inside the garage and tarpaulins were placed over the stolen goods. The goods remained there until July 13, when they were seized by men from the Federal Bureau of Investigation. At the same time Ventre and one or two others who were then about the garage were arrested. Russo was arrested later the same day at Paterson, New Jersey, while en route with his service truck. Both Ventre and Russo were indicted for receiving and having in their possession, etc., the stolen interstate shipment, knowing the goods to have been stolen. Ventre pleaded guilty.

There was no evidence that Russo had been in the garage between July 9 and July 13 or that he knew that there was anything loaded on his truck which was stored in the garage. The closest any government witness placed Russo to the stored trucks while the stolen goods were upon them was outside of the garage and it was testified by government witnesses, and was undisputed, that the goods on the trucks could not be seen by any one outside the garage. Russo himself admitted to having been outside the garage on the mornings of July 11, 12, and 13, when he obtained for his daily work his truck parked on the street in front of the garage. Ventre, who appeared as a witness for the government, was specifically unable to say that Russo had any knowledge that a portion of the cigarettes was on his stored truck, or that he had any knowledge whatsoever of the stolen property.

Viewing the evidence in the light most favorable to the government, as the

jury's verdict of guilt requires, it is still quite apparent that Russo's possession of the stolen cigarettes was no more than constructive at most. The absence of any direct proof of Russo's possession renders that certain. His possession rested alone upon his ownership of one of the stored trucks upon which a portion of the stolen cigarettes was found.

The learned trial judge was of the opinion that Russo's possession of the stolen property, although impliedly established, was sufficient to warrant an inference that he knew that the goods had been stolen. In so ruling, the learned court below relied upon the authority of Wilson v. United States, 162 U.S. 613, page 619, 16 S.Ct. 895, page 898, 40 L.Ed. 1090, where the Supreme Court said that "Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." But it must be noted that in the Wilson case the possession which there supported an inference of the possessor's guilty knowledge was an actual and exclusive possession of the "fruits of crime." Likewise in Bruce et al. v. United States, 8 Cir., 73 F.2d 972, 973, and in Niederluecke v. United States, 8 Cir., 47 F.2d 888, 889, the defendants, whose guilty knowledge was inferred from their possession of stolen property, had been taken while driving the automobiles which constituted the tainted property in each of those cases. In Lindsey v. United States, 4 Cir., 264 F. 94, 95, where an inference of guilty knowledge was held permissible, the defendant had been apprehended "in the act of taking a case [of illicit liquor] from the direction of the wharf and placing it in the automobile [the crime involving transportation]."

On the other hand, in cases where verdicts of guilt have been sustained although the possession of stolen property was not actual and exclusive, there were other circumstances shown from which the jury, without any consideration being given to the implied possession, could properly infer that the defendants had guilty knowledge. Thus in Husten v. United States, 8 Cir., 95 F.2d 168, 169, the stolen property was found scattered in an alley under the window of the defendant's hotel room immediately after the police had gained resisted admittance to the room, this with other attending circumstances fully warranting the inference that the defendant had thrown the stolen goods from the window. In Rosen et al. v. United States, 2 Cir., 271 F. 651, 654, the defendants, against whom an inference of guilty knowledge was permitted, had helped the thieves to unearth the buried stolen property (copper), load it upon a railroad car and disguise its identity by covering it over with scrapped fenders, one of these implied possessors then signing a bill of lading for the shipment of the copper under the false description of scrap iron. And in Chass v. United States, 3 Cir., 258 F. 911, 913, where the stolen goods had been found in the defendant's office, when called upon to explain their presence, he gave two entirely contradictory explanations, thus supplying the basis for an inference of guilty knowledge. Underhill states in his Criminal Evidence, 3d Ed. 1923, § 469, that "A mere constructive possession is not enough. The accused will not be presumed to have stolen articles which he does not know he possesses." And in Zoline's Federal Criminal Law and Procedure (1921) it is said in § 324 that "A constructive possession is not sufficient to hold a person responsible on a criminal charge." There is no present occasion to go so far.

The theft of the property is not here involved. The offense with which the defendant is charged is the receipt and possession of the cigarettes, after they had been stolen while in interstate commerce, with knowledge on the part of the defendant that they had been so stolen. Plainly, knowledge of the illicit character of the goods is an essential element of the crime charged. Assuming, therefore, for the purposes of this case that Russo's constructive possession of the stolen cigarettes supplied proof of the requisite possession called for by the statute, certain it is that the implied possession is incapable of supporting an inference that the constructive possessor knew that the goods had been stolen. Cf. Sorenson v. United States, 8 Cir., 168 F. 785, 798, 799. This is but the logical result of the rule respecting the efficiency of circumstantial evidence. When circumstances alone are relied upon to establish a fact, they must themselves be directly proven and not presumed. United States v. Ross, 92 U.S.

281, 284, 23 L.Ed. 707. A presumption may not be rested upon another presumption. United States v. Ross, supra, 92 U.S. at page 283, 23 L.Ed. 707; Dahly v. United States, 8 Cir., 50 F.2d 37, 43; Ribaste et al. v. United States, 8 Cir., 44 F.2d 21, 23; Gerson v. United States, 8 Cir., 25 F.2d 49, 60; Brady v. United States, 8 Cir., 24 F.2d 399, 404. The rule could not be otherwise if the legally permissible effect of circumstantial evidence is to receive due respect. In order to justify a conviction of crime on circumstantial evidence it is necessary that the directly proven circumstances be such as to exclude every reasonable hypothesis but that of guilt. See United States v. Baker et al., 2 Cir., 50 F.2d 122, 123; Glass v. United States, 3 Cir., 231 F. 65, 68; Hart v. United States, 3 Cir., 84 F. 799, 808.

In a case, therefore, such as the present where there is an utter want of any evidence as to the defendant's knowledge that the property was stolen (except for his constructive possession thereof), an inference of his innocence of any such knowledge is as readily deducible as is an inference of knowledge. It follows therefore that the evidence was insufficient to support a conviction. Consequently, the defendant was entitled to a directed verdict of acquittal and the learned trial court's refusal of his request therefor was error.

The judgment of the District Court is reversed and a new trial ordered.