### UNITED STATES v. JONIKAS.
### No. 10243.

United States Court of Appeals
Seventh Circuit.

Feb. 21, 1951.

John J. Kelly, Jr., Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Irwin N. Cohen, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment entered on a jury verdict, which found the defendant, Stanley Jonikas, guilty on an indictment which charged him with a violation of 18 U.S.C.A. § 472, for possessing and passing four counterfeited $20 bills.

In the early morning hours of February 19, 1950, the defendant drove across the city to a community where he was not known. There he visited four different taverns. In each tavern he bought one or more drinks of whiskey and in each case paid for the drinks with a counterfeit $20 bill. In each tavern he accepted and kept the change given to him for the $20 bill.

The defendant testified that he was thirty years old; that he had had difficulty in

---

talking for the past five years; that on the night in question he left his home about 10:00 P.M. and drove to the community where he passed the counterfeit bills, arriving there about 12:00 o'clock; that he made the rounds of the taverns in that vicinity looking for a crap game; that he had about twenty-five drinks of whiskey but was not so intoxicated that he could not have taken care of himself shooting craps; that at the time he was arrested the police found about $250 on his person, and that at the time he passed the $20 bills he did not know that they were counterfeit; that these bills were won by him in a crap game with some negroes on the preceding afternoon.

■ In the trial an agent of the United States Secret Service testified that he had been with the Secret Service for about eight years and had had occasion to handle cases involving counterfeit money before; he testified that the four $20 bills were counterfeit. It was pointed out that the four bills each bore the same serial number, and that that fact in itself was definite proof that the bills were not genuine but counterfeit. On the following day in the United States Secret Service office Elmer Moore, the Secret Service agent, showed the four bills to the defendant and asked the defendant whether they were the four that he had passed in the four taverns on the preceding morning. To that question the defendant answered, "Yes, those are the bills I passed, all right, but I didn't know they were counterfeit." At that time the defendant wrote his initials on each of the four bills to identify them.

In the hearing before this court counsel for the defendant presented two grounds for reversal of the judgment: (1) that there was not sufficient evidence to show that the $20 bills were counterfeit, and (2) that the defendant was not shown to have had knowledge of the fact that the bills were counterfeit at the time he passed them.

Neither in the trial nor in the brief filed by the defendant here, did the defendant raise the question as to the sufficiency of the evidence to sustain the finding that the four bills were counterfeit. We think that there can be no doubt but that the evidence was sufficient to support this finding. The Secret Service agent with eight years of experience, and having had occasion to handle cases involving counterfeit money testified positively that they were counterfeit. He was stopped in an attempt to explain this statement by an objection of the attorney for the defendant. The attorney for the defendant made no attempt to question the competency of this witness as an expert and, in effect, admitted that the bills were counterfeit. The four $20 bills, each bearing the same serial number, were introduced in evidence.

We are also of the opinion that the evidence in this cause furnished a sufficient basis for a reasonable inference by the jury that the defendant at the time he passed these bills knew that they were counterfeit.

■ As counsel for the Government points out, in the absence of a motion in the trial court for a judgment of acquittal or for a new trial, no question can ordinarily be presented in this court as to the sufficiency of the evidence to support the verdict and the judgment. United States v. Powell, 7 Cir., 155 F.2d 184; United States v. Earnhardt, 7 Cir., 153 F.2d 472. As said in United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555: "This practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact."

We find, however, that appellate courts have recognized an exception to this rule where there is "readily apparent upon the face of the record such a condition of unfairness and injustice as would appeal to our discretion and prompt us to correct the obvious error in the proper administration of justice." United States v. Powell, supra [7 cir. 155 F.2d 185]. See Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S. C.A.

The defendant relies on United States v. Litberg, 7 Cir., 175 F.2d 20. That case

however, presented an entirely different factual situation from the one with which we are here confronted. There the defendant was a married man with a family, was engaged in a reputable business, and sustained a good reputation in the community where he lived as to his veracity and as to his being a law abiding citizen. In that case the defendant passed the counterfeit bills in a tavern where he was known by the proprietor and the employees, and the trial court seemed to base the defendant's knowledge that the bills in question were counterfeit on the mere fact that the defendant deliberately set fire to and burned one of the bills. In that case this court was of the opinion that that one incident while the defendant was intoxicated did not furnish a sufficient basis on which to find that the defendant had knowledge that the bills were counterfeit.

In United States v. Tatcher, 3 Cir., 131 F.2d 1002, an entirely different factual situation was presented from that with which we are faced in the instant case. In United States v. Russo, 3 Cir., 123 F.2d 420, page 423, the court said, " * * * there is an utter want of any evidence as to the defendant's knowledge that the property was stolen (except for his constructive possession thereof), * * *."

In the instant case, however, we find the defendant, as shown by the evidence, to have gone across town to a community where he was not known; that he entered four different taverns passing a counterfeit bill in each, and then staying only a few minutes in each before leaving. At the time the defendant passed these bills he had approximately $250 of genuine bills in his pocket and about $300 of genuine money in his home. The defendant testified that he had been shooting craps for about ten years and that he was looking for a crap game in the various taverns where he passed these bills. The defendant claimed that he had won the four counterfeit bills in a crap game held the preceding day in an alley near Swift & Company's plant out at the Stock Yards. He said several men took part in the game, but when he was asked to tell the names of some of them he answered, "I don't know the names right." The bills seemed to be new and did not have the appearance of money which had been used in a crap game. It would be reasonable for the jury to assume that a professional gambler would be sufficiently acquainted with money and sufficiently careful of the money he won in a crap game as to have noticed that these particular bills were new and had not been so used.

Moore, the Secret Service agent, also testified that the defendant offered to give the Secret Service agent the genuine money he had on his person, amounting to approximately $250, if his difficulty could be "fixed some way." Moore also testified that in the presence of the defendant he told the other Government agent of the defendant's offer and that when he told this the defendant said nothing.

We find in this record no such insufficiency of evidence of defendant's knowledge that the bills were counterfeit as to require us, under Rule 52(b), to reverse this judgment. We believe that the evidence here furnished a reasonable basis for the jury's inference of the defendant's guilty knowledge.

The judgment is affirmed.